# NO. 12-20-00246-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| **BAYLOR SCOTT & WHITE, APPELLANT** | § | *APPEAL FROM THE 7TH* |
| **V.** | | |
| **PROJECT ROSE MSO, LLC, TOUCHDOWN INTERCEPTION, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 62 ROSES, LLC,** | § | *JUDICIAL DISTRICT COURT* |
| **APPELLEES** | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Baylor Scott & White (BSW) appeals the trial court's denial of its Texas Citizens Participation Act (TCPA) motion to dismiss the counterclaim against it filed by Project Rose MSO, LLC; Touchdown Interception, LLC, Individually and Derivatively on Behalf of 62 Roses, LLC (collectively "Rose" unless otherwise indicated).  We affirm in part and reverse and remand in part.

## BACKGROUND[1]

In 2015, Texas Spine and Joint Hospital began discussions with former National Football League (NFL) players Earl Campbell and Gary Baxter about a business venture establishing a cutting-edge sports science and medical facility at the Spine and Joint Hospital facility in Tyler, Texas. These discussions continued throughout 2015 and early 2016, leading Campbell and Baxter to form several new entities, including Project Rose and Touchdown Interception.

---

[1] The recitation of the facts in this opinion is based on the pleadings and evidence as they have been developed at this early stage of the litigation.  We recognize that the parties have not yet conducted discovery.

1

Touchdown Interception and Texas Spine and Joint executed a Company Agreement to form 62 Roses to develop and operate the facility.

The parties entered several contracts in 2017 and 2018, including a Lease Agreement, a License Agreement, and a Consultant Agreement. Under the Consulting Agreement, Project Rose was to provide consulting services to Texas Spine and Joint related to the facility's marketing, construction, and operation. Due to the high-profile nature of the parties and the facility, the venture generated significant public interest from the community and the press.

Rose alleges that it was not compensated for its efforts as promised under the agreements. Rather, according to it, Texas Spine and Joint strung Rose along and encouraged its owners to continue their efforts to market the facility and provide the services they agreed upon. Rose alleges that Texas Spine and Joint represented to it that compensation would be forthcoming after recouping its capital expenditures in developing it, but that it never came.

Shortly prior to the scheduled opening, Baxter and Campbell noticed that the facility's logo changed to include Baylor Scott & White in its title. After further investigation, Rose alleges that it learned that Texas Spine and Joint sold a controlling portion of its interest in the venture to a Baylor Scott & White entity. Rose alleges that BSW is a controlled affiliate of this entity that took part in the purchase, and that the sale violates Texas Spine and Joint's agreements with Rose.

Rose contends that the facility opened and became a successful venture, but Texas Spine and Joint repudiated their agreements. Rose alleges that Texas Spine and Joint and BSW, along with the other third-party defendants, engaged in a fraudulent scheme and conspired to profit from Rose's efforts in bringing the facility to fruition, without ever providing any compensation to it.

According to BSW, Texas Spine and Joint received little assistance from Rose in building the facility, and because it had little to show for its investments, it gave notice of termination of the License Agreement, the Consultant Agreement, and the Lease Agreement in August 2019. In response, Project Rose sent invoices to Texas Spine and Joint for hourly consulting work totaling $4,319,370. Texas Spine and Joint disputed the validity of the invoices, and according to it, Baxter threatened to hold a press conference announcing litigation against it.

Accordingly, Texas Spine and Joint preemptively filed suit against Rose, including claims for breach of the Consultant Agreement, a declaratory judgment that it had not breached the Consultant Agreement, and a request to wind up 62 Roses' business.

Rose filed a counterclaim against Texas Spine and Joint and added third-party claims against several third-party defendants, including BSW (we refer to this claim, including the third-party claim against BSW, as a "counterclaim" for ease of reference). Specifically, Rose's counterclaim included the following causes of action against BSW: (1) fraudulent inducement and fraud; (2) tortious interference with existing contract; (3) theft of trade secrets and intellectual property under the Texas Theft Liability Act (TTLA) and Texas Uniform Trade Secrets Act (TUTSA); (4) unfair competition; (5) common-law misappropriation; (6) promissory estoppel/detrimental reliance; (7) quantum meruit; (8) unjust enrichment; (9) money had and received; (10) civil conspiracy; (11) aiding and abetting and knowingly participating in Texas Spine and Joint's alleged breaches of fiduciary duties; and (12) a declaratory judgment that the 2017 sale of ownership in the facility is void.[2]

BSW answered the counterclaim with a general denial and also asserted that it was not a proper party to the suit. BSW moved to dismiss Rose's counterclaim under the TCPA. The trial court denied the TCPA motion to dismiss. Rose amended its petition to join other third-party defendants as parties to the dispute, who similarly filed motions to dismiss under the TCPA. The trial court denied a request for discovery and overruled BSW's TCPA motion. BSW filed this interlocutory appeal challenging the trial court's denial of its motion.[3]

### TCPA[4]

In BSW's first issue, it contends that the trial court erred in denying its TCPA motion to dismiss Rose's counterclaim because (1) its claims are based on BSW's exercise of its rights of

---

[2] In addition to these causes of action, Rose also pleaded other causes of action against Texas Spine and Joint that are not part of this interlocutory appeal and are unaffected by our opinion.

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.008 (West 2020) (authorizing expedited appeal). The parties in the underlying suit await our disposition of this appeal before moving forward on their companion TCPA motions filed by the other third-party defendants after the trial court overruled BSW's motion.

[4] The Texas Legislature recently amended the TCPA. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. These revisions apply to actions filed on or after September 1, 2019. *Id.* §§ 11–12, 2019 Tex. Gen. Laws at 687. The underlying lawsuit was filed on February 24, 2020. Rose joined BSW as a third-party defendant and filed its counterclaim on April 17, 2020. Therefore, as the parties agree, the current revised version of the TCPA controls. *See id.*

free speech and association and that no exemption applies,[5] thereby implicating the TCPA; (2) Rose failed to establish by clear and specific evidence a prima facie case of each essential element of its claims against BSW; and (3) in any event, BSW established that it is entitled to judgment as a matter of law because Rose sued the wrong party. In its second issue, BSW contends that the trial court erred by failing to sustain its objections to Rose's evidence.

## Standard of Review

We consider de novo the legal question of whether the movant has established by a preponderance of the evidence that the challenged legal action is covered by the TCPA. *MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933, 939 (Tex. App.—Tyler 2019, pet. denied) (citing *Serafine v. Blunt*, 466 S.W.3d 352, 357 (Tex. App.—Austin 2015, no pet.)). We also review de novo a trial court's determination of whether a nonmovant has presented clear and specific evidence establishing a prima facie case of each essential element of the challenged claims. *Id.* Similarly, we review questions of statutory construction de novo. *Id.* (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)). We review the pleadings and the evidence in the light most favorable to the nonmovant. *Id.* (citing *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.)).

## General TCPA Framework

The stated purpose of the TCPA is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2020).

To accomplish this objective, the TCPA provides a three-step process for the dismissal of a "legal action" to which it applies. *Montelongo v. Abrea*, 622 S.W.3d 290, 295–96 (Tex. 2021) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 686 (Tex. 2018) (per curiam)). First, the movant must demonstrate that the "legal action" is "based on or is in response to" its exercise of the right of speech, petition, or association. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a) (West 2020), 27.005(b) (West Supp. 2020). Second, if the movant meets that burden, the nonmovant may avoid dismissal by establishing "by clear and specific evidence a

---

[5] BSW concedes that Rose's common law fraud cause of action is exempt from the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(12). BSW expressly challenges the applicability of any other exemption.

prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Finally, if the nonmovant satisfies that burden, the court still must dismiss the "legal action" if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Intertwined with and overlying this multi-step dismissal process is the TCPA provision exempting certain actions from its application.[6] *See id.* § 27.010 (West 2020); *Morrison v. Profanchik*, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.). When invoked, the trial court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the dismissal process. *See Castleman*, 546 S.W.3d at 688; *Morrison*, 578 S.W.3d at 680.

## THE TCPA'S APPLICABILITY

BSW contends that the TCPA applies to Rose's counterclaim, because it is based on or in response to BSW's exercise of the right of free speech, or alternatively, its right of association.

### Governing Law - Exercise of the Right of Free Speech

In relevant part, a "legal action" means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6) (West 2020). "Based on or in response to" is not defined in the statutory scheme. Prior to the 2019 amendments, the statute provided that a TCPA motion to dismiss could be predicated on a legal action "based on, related to, or in response to a party's exercise of the right of free speech . . . ." *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, 2011 Tex. Sess. Law. Serv. 960 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b)). It is unclear how the removal of the "relates to" language affects this nexus requirement. *See* Mark C. Walker, *The Essential Guide to the Texas Anti-SLAPP Law, the Texas Defamation Mitigation Act, and Rule 91a,* 91 THE ADVOC. (TEXAS) 280, 297-99 (2020) (discussing evolution of TCPA, including 2019 amendments and issues raised thereby).

---

[6] We note that although Texas courts have described the TCPA as a three-step process, it may actually be now better described as a four-step process: (1) Does the movant demonstrate that the TCPA applies to the legal action; (2) Does the nonmovant show that any statutory exemptions remove some or all of its claims from the TCPA's scope; (3) Does the nonmovant meet its burden to establish a prima facie case on non-exempted causes of action; and (4) Does the movant establish a defense or other ground entitling it to judgment as a matter of law? This has become more apparent as the Legislature greatly increased the number of exemptions in its 2019 amendments to the TCPA.

Texas courts have used the plain and ordinary meaning of such words and phrases derived from relevant dictionary sources in the past. For example, the Texas Supreme Court recently described the definition for "related to" in the TCPA in part as defined by **Black's Law Dictionary**. *See **In re City of Galveston***, 622 S.W.3d 851, 858 n.28 (Tex. 2021). Similarly, another court recently used dictionary definitions of the word "common" in the TCPA "exercise of the right of association" context. *See **Kawcak v. Antero Res. Corp.***, 582 S.W.3d 566, 575-78 (Tex. App.—Fort Worth 2019, pet. denied).

"Based on" in **Black's Law Dictionary** is defined only in the copyright context. *See Based on*, BLACK'S LAW DICTIONARY (10th ed. 2009). However, the verb "base" is defined in relevant part as "to make, form, or serve as a foundation for . . . [;] to establish (an agreement, conclusion, etc.); to place on a foundation; to ground . . . ." *See Base*, BLACK'S LAW DICTIONARY (10th ed. 2009). Similarly, "base" is defined in another dictionary as "[t]he fundamental principle or underlying concept of a system or theory; basis; a fundamental ingredient; chief constituent . . . [;] the fact, observation, or premise from which a reasoning process is begun . . . ." *See Base*, THE AM. HERITAGE COLL. DICTIONARY (2d ed. 1982).

Whatever the exact contours of the phrase "based on" means after the Legislature's amendment removing the phrase "related to," Texas courts, including this Court, have stated that the TCPA's required nexus is satisfied at minimum for legal actions that "are factually predicated on" allegations of conduct that fall within one of the TCPA's protected rights. *See, e.g., **Dyer v. Medoc Health Servs., LLC***, 573 S.W.3d 418, 429 (Tex. App.—Dallas 2019, pet. denied); ***Grant v. Pivot Tech. Sols., Ltd.***, 556 S.W.3d 865, 879 (Tex. App.—Austin 2018, pet. denied); ***Morgan v. Clements Fluids S. Tex., LTD.***, 589 S.W.3d 177, 185 (Tex. App.—Tyler 2018, no pet.). The level of nexus required "includes no qualification as to its limits," and is very broad. *See **Coleman***, 512 S.W.3d at 901; *see also **Grant***, 556 S.W.3d at 879-80 (citing ***Cavin v. Abbott***, 545 S.W.3d 47, 70 (Tex. App.—Austin 2017, no pet.)). A plaintiff's claims are "in response to" a protected activity when they react to or are asserted subsequently to the communication. *See **Grant***, 556 S.W.3d at 880.

Moreover, overlaid on top of this nexus requirement, at least in the exercise of free speech context, is the definition that the "exercise of the right of free speech" means "a communication made *in connection with* a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (emphasis added). Texas courts have interpreted this phrase to mean

that the statute requires only that the communication have a "tangential relationship" to such a matter, and the connection need not be more than "tenuous or remote." *Coleman*, 512 S.W.3d at 900-01.  Importantly, the legislature left this definition and ensuing caselaw undisturbed in the 2019 amendments to the TCPA.

"Communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic.  TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1).  Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech.  *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).  Further, the TCPA does not require that the communications specifically mention a matter of public concern or have more than a "tangential relationship" to such a matter.  *Coleman*, 512 S.W.3d at 900.  Rather, the TCPA applies so long as the movant's statements are "in connection with" any of the matters of public concern listed in the statute.  *See id.*

The 2019 legislative amendments modified the definition of "matter of public concern" to mean a statement or activity regarding: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political, social, or other interest to the community; or (C) a subject of concern to the public.  TEX. CIV. & PRAC. CODE ANN. § 27.001(7).

In determining whether the TCPA is applicable, we conduct "a holistic review of the pleadings."  *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018).  Our analysis is not constrained by the "precise legal arguments or record references" made by the moving party regarding the TCPA's applicability.  *Id.*  Rather, our focus is "on the pleadings and on whether, as a matter of law, they are based on or [in response to] to a matter of public concern."  *Id.*  In the final analysis then, "[w]hen it is clear from the [nonmovant's] pleadings that the action is covered by the [TCPA], the [movant] need show no more."  *Id.* (quoting *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)); *see also Coleman*, 512 S.W.3d at 901–02 (concluding as a matter of law that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern); *Lippincott*, 462 S.W.3d at 510 (concluding as a matter of law that provision of medical services by a health care professional was a matter of public concern).

7

## The TCPA Applies to Rose's Counterclaim as an Exercise of the Right of Free Speech

BSW asserts that the TCPA applies to Rose's counterclaim, including all causes of action as part of that counterclaim, because they are based on or in response to its exercise of the right to free speech and association. The pleadings, especially the plaintiff's allegations, are the best evidence to determine the nature of a legal action and the applicability of the TCPA. *See Hersh,* 526 S.W.3d at 467.

The gravamen of Rose's counterclaim is that Texas Spine and Joint, along with all the other defendants, including BSW, acted in a concerted scheme to take advantage of Rose's owners' notoriety, celebrity, professional contacts and relationships, as well as their expertise in what would be attractive to a prospective patient, without having the reciprocal obligation to compensate them for their efforts. The communications at issue forming the basis of the suit have at least a tenuous, remote, or tangential relationship to a matter of public concern.

There is little doubt that the legislature amended the TCPA, at least in part, to curtail the overly broad language and applicability of its framework. Indeed, Rose points to a recent Texas Supreme Court case holding that "[a] private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 137 (Tex. 2019). Rose argues that the dispute here involves only private contract and tort claims arising out of its business dealings, and that as it involves only private parties, the dispute is not a matter of public concern, and the TCPA does not apply to its counterclaim.

While we are bound by this holding, we do not agree that it applies under the particular facts of this case. In making its holding, the Court stated as follows:

> The record is devoid of allegations or evidence that the dispute had any relevance to the broader marketplace or otherwise could reasonably be characterized as involving public concerns. On the contrary, the alleged communications were made to two private parties concerning modest production at a single [oil and gas] well. These communications, with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA.

*Id.* at 136 (footnote omitted). The Court went on to explain that "[w]e have previously held that private communications are sometimes covered by the TCPA." *Id.* (citing *Coleman*, 512 S.W.3d 895; *Lippincott*, 462 S.W.3d 507). The Court stated, "These prior cases involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private

8

parties involved," and that those cases involved matters of public concern expressly defined in the statute to include issues related to "health or safety," and "environmental, economic, or community well-being," concerns not implicated in ***Creative Oil***. *See id.* (citing ***Coleman***, 512 S.W.3d at 898, 901 (concluding that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern due to "serious safety and environmental risks"); ***Lippincott***, 462 S.W.3d at 509–10 (concluding that alleged improper provision of medical services by a health care professional are matters of public concern)).

Rather than entirely foreclosing private business disputes from the TCPA's scope, the Texas Supreme Court left open the possibility that such cases may still implicate the TCPA as a matter of public concern if its subject matter otherwise falls within the TCPA's definitional scope or when it has public relevance beyond the purely private interests of the parties involved in the dispute.[7]

Rose also relies on a case transferred from this Court to the Texarkana Court of Appeals.[8] *See **Martin v. Hutchison***, No. 06-19-00093-CV, 2020 WL 6788243, at *9-10 (Tex. App.— Texarkana Nov. 19, 2020, pet. denied) (mem. op.). Following ***Creative Oil***, the Texarkana Court held in ***Martin*** that a dispute concerning the distribution of proceeds from the transfer of an asset among the shareholders in a closely-held, ten shareholder corporation with no publicly traded stock, was a purely private business dispute with no potential relevance or impact on the wider community or public-at-large. *See **id.*** As such, the court concluded that the TCPA did not apply. *See **id.*** We agree that ***Martin*** is similar to ***Creative Oil*** and was the correct holding.[9] But again, we conclude that this case is distinguishable.

The Texas Supreme Court also stated in ***Creative Oil*** that "[i]t is not the Court's task to choose between competing policies addressed by legislative drafting[,]" and that "[w]e apply the

---

[7] This is in contrast to the amendments to the "right of association" prong, which Texas courts have generally interpreted to require the "common interest" to be a common interest with the public-at-large, and that the right of association does not encompass or protect activity of two tortfeasors conspiring to act tortiously for their own selfish benefit. *See, e.g., **Gaskamp v. WSP USA, Inc.***, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (op. on reh'g en banc); ***Kawcak v. Antero Res. Corp.***, 582 S.W.3d 566, 588 (Tex. App.—Fort Worth 2019, pet. denied).

[8] Rose also relies on other cases decided before ***Creative Oil***. *See, e.g., **Dyer v. Medoc Health Servs., LLC***, 573 S.W.3d 418, 428 (Tex. App.—Dallas 2019, pet. denied). Since the Texas Supreme Court provides more recent analysis in ***Creative Oil***, we instead focus on it and subsequent cases interpreting it.

[9] ***Martin*** also discusses other pre- and post-***Creative Oil*** cases relied upon by Rose that are similarly distinguishable from the instant case.

9

mandates in the statute as written." *Creative Oil*, 591 S.W.3d at 133.  Rose's counterclaim falls within the TCPA's exercise of free speech prong because it is based on or in response to communications made in connection with a matter of public concern as that definition has been modified by the Legislature's recent amendments.

In contrast to the *Creative Oil* line of cases, this case involves prominent celebrities.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7) (including within the TCPA's scope statements or activities regarding public figures or other persons who have drawn substantial public attention due to their official acts, fame, notoriety, or celebrity).   The formation of the relationship between the parties was based in part on their celebrity status and the attention that fact would bring to their business venture.  This business venture did in fact lead to significant interest in the community, as it was covered by several media outlets, and it pertains to a world-class sports medicine facility.  Their involvement in the project was specifically designed to be a matter of public concern, because the parties, by design, utilized the media and press coverage to foster public interest in the project.

In fact, the media followed the progression of the project with substantial press coverage.  For example, one article discussed a VIP tour and reception at the facility including the involvement of other NFL celebrities such as Mike Singletary and Robert Brazile, along with Butch Myers and Cash Myers, who are prominent rodeo competitors.  This article discussed the NFL's involvement in the project, and that it would attract many former and current NFL players and other elite athletes.  The news article, along with others BSW attached to its motion, further discussed that the facility features the latest innovations in modern fitness and rehabilitation equipment, and will have a significant role as a biomedical research and treatment facility on a wide array of sports injuries, from muscle tears to concussions and other topics of concern to the public.  The articles also focused on the facility's creation of jobs, along with the broader economic impact it could have on the local community by attracting retired and current athletes due to their notoriety, which would in turn attract the public-at-large.

Rose's counterclaim is in response to the private communications and the ensuing alleged agreements between Texas Spine and Joint and BSW, along with the other third-party defendants, to deprive Rose, which is operated by notable public figures, of the fruits of their labor and compensation by committing various acts of fraud, interference with their relationship with Texas Spine and Joint, and misappropriation of trade secrets, along with various remedies to

compensate them for this wrongdoing. These communications that led to agreements, which are communications in and of themselves, were made regarding Rose's owners, who are public figures. Therefore, we reject Rose's argument that its counterclaim is in response to BSW's *conduct* in financing the acquisition of the facility rather than its *communications* and ensuing agreements to deprive it of the expected benefits of the business venture.

Furthermore, the fallout by the repudiation of the venture by Texas Spine and Joint, based on this alleged scheme involving agreements between it, BSW, and the other third-party defendants, to acquire the facility without compensating Rose, is also a matter of public concern. Texas Spine and Joint's and BSW's alleged agreements, which are communications, have relevance to the public beyond the purely private business dispute. The communications have an effect on whether the facility would ever come to fruition, and limit Rose's involvement in the project. In fact, after learning of the repudiation, Baxter allegedly threatened to go to the media to force Texas Spine and Joint, BSW, and the other third-party defendants to cease their allegedly tortious conduct and galvanize support for Rose. This further bolsters the connection with the communications and the community's interest in the venture and its dissolution. Therefore, we hold that the TCPA applies to Rose's counterclaim under these unique circumstances. *See, e.g., Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at \*5 (Tex. App.—Beaumont July 15, 2021, no pet. h.) (mem. op.) (applying 2019 amendments and holding that TCPA applied to plaintiff's claim because retaliatory defamatory statements by defendants were made in response to plaintiff's allegations, which were not purely private matters, but pertained to "a subject of general interest and of value and concern to the public" because of involvement of rowing clubs, U.S.A. Rowing, and safety and welfare concerns).

Finally, we are unpersuaded by Rose's argument that its owners' status as public figures has no bearing on the TCPA applicability determination. Obviously, the communication must be "made in connection with the matter of public concern," but the definition of "matter of public concern" does not require that the statement or activity be regarding a public figure *who is a party*. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3), (7). Rather, it must be regarding a public figure. *See id.* Rose's owners' status as public figures, along with the fact that Rose is a party, provides the nexus linking the communications' relevance to a matter of public concern.

In summary, under the unique circumstances of this case, even though the Legislature's amendments show an intent to limit the applicability of the TCPA, we must apply it as written.

11

It is apparent from the pleadings that the TCPA applies, and BSW need show no more. That is, BSW demonstrated based on Rose's pleadings that the communications had at least a tangential, remote, or tenuous relationship to a matter regarding the owners of Rose, who are public figures on a matter of public concern—namely the completion and operation of the world-class sports medicine and research facility, which did in fact generate considerable public interest through press and media coverage. The alleged private communications between Texas Spine and Joint and BSW resulted in an agreement, which is in itself a communication, to acquire the facility that became successful due to Rose's owners' notoriety. Rose's suit is in response to those communications. Thus, while these communications resulting in this dispute no doubt have an effect on the private financial interests of the parties involved, it also had a wider impact on the public-at-large as a matter of public importance. In other words, contrary to the *Creative Oil* line of cases, Rose's counterclaim is in response to BSW's exercise of its right of speech on a matter of public importance, which implicates the TCPA.

Because we have concluded that Rose's counterclaim is based on or is in response to BSW's exercise of the right of free speech, we need not consider the argument that it separately applies under the right of association ground. *See* TEX. R. APP. P. 47.1; *Coleman*, 512 S.W.3d at 901–02 ("Because we hold that, on this record, the communications were made in the exercise of the right of free speech under the TCPA, we need not reach [the issue of whether the TCPA applies under the "right of association prong.]").

We sustain the portion of BSW's first issue contending that the trial court erroneously concluded that the TCPA does not apply to Rose's counterclaim.

## TCPA EXEMPTIONS

Rose contends that the TCPA's fraud and misappropriation of trade secrets and corporate opportunities exemptions apply and absolve it of its duty to make a prima facie case on these and related claims.

### TCPA Exemption Standard of Review

The party asserting a TCPA exemption bears the burden of proving its applicability. *See Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Just as determining the applicability of the TCPA, the applicability of an

exemption may be determined from the pleadings.[10]  *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 480 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (noting we may rely on allegations in petition to satisfy exemption requirements); *see also Hawkins v. Fox Corp. Housing, LLC*, 606 S.W.3d 41, 46 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (same); *see also Hersh*, 526 S.W.3d at 467.  It would be incongruous to require the nonmovant to prove the elements of these causes of action to show that the exemption applies in order to avoid making the prima facie case of the claim's elements to survive the TCPA motion to dismiss.  *See Round Table Physicians Group, PLLC v. Kilgore*, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (noting that application of exemption means nonmovant need not make its prima facie case).  We also review this evidence in the light most favorable to the nonmovant. *Hieber*, 591 S.W.3d at 211.

If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; *Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).  Accordingly, application of an exemption means the nonmovant need not make its prima facie case.  *See Round Table Physicians Group*, 607 S.W.3d at 883; *see also Atlas Survival Shelters, LLC v. Scott*, No. 12-20-00054-CV, 2020 WL 6788714, at *6 (Tex. App.—Tyler Nov. 18, 2020, no pet.) (mem. op.).

## Rose's Common Law Fraud Claim Does Not Exempt Entire Counterclaim From TCPA

BSW conceded that Rose's common law fraud claim is exempt from the TCPA.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(12).  Rose argues that all of its causes of action are part of its "counterclaim" as a single "legal action" under the TCPA, the definition of which includes not only individual causes of action, but also its "counterclaim" and its entire "lawsuit" as a whole.  Accordingly, its argument continues, since BSW has conceded that Rose's common law fraud claim is exempt, the entire counterclaim is based on common law fraud, and that all of its other causes of action are exempt.  Recently, one of our sister courts rejected this argument, and we agree. *See KB Home Lone Star Inc. v. Gordon*, No. 04-20-00345-CV, 2021 WL 1760318, at *5 (Tex. App.—San Antonio May 5, 2021, no pet. h.) (op.) (rejecting similar

---

[10] As we discuss later in this opinion, the same is not true when the burden shifts to the nonmovant to prove by clear and convincing evidence a prima facie case for each essential element of the claim in question.  *See Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

argument that because DTPA exemption applied to DTPA claim that it exempted all other claims due to broad definition of "legal action").

As part of this argument, Rose also appears to contend that the factual bases for all of its causes of action arise from the same scheme that gives rise to the fraud claim: Texas Spine and Joint's plan to seize ownership of the facility from Rose and to extract its services without payment, and that BSW was a participant in that scheme. Accordingly, Rose argues, this common nucleus of facts exempts its entire counterclaim. But the Texas Supreme Court recently explained, "a cause of action consists not merely of the alleged facts, but also the elements those facts must establish to entitle the claimant to relief." *Montelongo*, 622 S.W.3d at 301. We do not dismiss "a fact or facts" in the TCPA context. *See id.* While the TCPA "indisputably requires the claimant to submit evidence of facts, the facts themselves are meaningless and cannot prevent dismissal unless they sufficiently establish 'each essential element of the claim.'" *Id.*

Instead, as with our cause of action by cause of action analysis in evaluating claims for dismissal under the TCPA, we must determine whether each individual cause of action falls within an exemption. *See KB Home Lone Star Inc.*, 2021 WL 1760318, at *5. This approach is consistent with the legislature's recent additions to its itemized laundry list of exemptions. That is, the exemptions apply to: (1) a specified laundry list of different types of parties based on their status in the underlying suit, (2) different categories of causes of action based on the nature of the claim, or (3) some combination thereof. *See generally* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010. Given that any particular lawsuit may involve multiple parties redressing several independent injuries through a multitude of different causes of action, this laundry list exemption methodology demonstrates the legislature's intent to examine each exemption on a cause of action by cause of action basis within the context of the entire lawsuit that otherwise falls within the TCPA. *See id.*; *KB Home Lone Star Inc.*, 2021 WL 1760318, at *5.

**Fraud Exemption**

The TCPA does not apply to "a legal action based on a common law fraud claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(12). The 2019 legislative amendment enacted this exemption for the first time.

BSW admits that Rose's common law fraud claim is exempt from the TCPA. Although we have held that this concession does not automatically exempt Rose's entire counterclaim,

14

other causes of action or claims for relief fall within this exemption. That is, the statutory fraud exemption does not exempt only common law fraud claims. It is not so limited. Instead, it states that the TCPA does not apply to a legal action *based on* a common law fraud claim. *See id.* We presume that the Legislature worded it in this manner for a purpose, and we apply the plain language of the words used in the statutory exemption. *See Creative Oil*, 591 S.W.3d at 133. There are other legal actions—i.e. causes of action or claims for relief—alleged by Rose that are based on, and require proof of, common law fraud. This means that, as pleaded by Rose, these causes of action require proof of common law fraud as part of their elements, are "based on a common law fraud claim," and thus are exempt from the TCPA's reach under the facts of this case. Specifically, we hold that Rose's causes of action for unjust enrichment, civil conspiracy, and aiding and abetting a breach of fiduciary duty are *based on* common law fraud.

Unjust Enrichment

The Texas Supreme Court has suggested, although not definitively ruled, that unjust enrichment is a recognized independent cause of action. *See, e.g., Ritchie v. Rupe*, 443 S.W.3d 856, 882 (Tex. 2014) ("[V]arious common-law causes of action already exist to address misconduct by corporate directors and officers [such as] unjust enrichment . . . ."); *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (suggesting "recovery under the theory of unjust enrichment" available as a cause of action). Texas intermediate appellate courts are split regarding whether it is a separate cause of action. *Compare Richardson Hosp. Auth. v. Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.) (holding unjust enrichment is not stand-alone cause of action, but is an implied contract, equitable measure of damages that addresses failure to make restitution for benefits wrongfully received) *with Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (holding unjust enrichment is independent cause of action). For TCPA purposes, however, an unjust enrichment claim or remedy is a "legal action" because it is a "cause of action" or "other judicial pleading or filing that requests . . . equitable relief." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6).

Unjust enrichment occurs when a person has wrongfully secured or passively received a benefit which it would be unconscionable to retain. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied). As a remedy based on quasi-contract principles, unjust enrichment is unavailable when

15

a valid, express contract governing the subject matter of the dispute exists. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000); *Eun Bok Lee*, 411 S.W.3d at 111–12.

A party may recover under an unjust-enrichment theory if one party has obtained a benefit from another by fraud, duress, or the taking of unfair advantage. *See HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998); *Heldenfels Bros*, 832 S.W.2d at 41; *Denco CS Corp. v. Body Bar, LLC*, 445 S.W.3d 863, 876–77 (Tex. App.—Texarkana 2014, no pet.).

Rose alleges that Campbell and Baxter provided substantial value, service, and benefits by developing and marketing the facility. During the two years that followed BSW's acquisition of the facility, it did not reject these benefits. Rather, Rose contends that BSW schemed to "leave it in the dark" about the nature of the interest that BSW had purchased, and about the facility's ownership. The agreements themselves—and, at minimum, Campbell's and Baxter's continued work—gave BSW ample notice that Rose expected profit distributions and compensation. Instead, Rose alleges that it received no compensation, the facility's profits were diverted through Texas Spine and Joint to BSW, and BSW must return these profits.

The underlying basis for Rose's argument is that BSW acquired benefits from Rose's efforts by fraud. Therefore, as a claim or equitable remedy based on underlying proof of a common law fraud claim, this claim or remedy falls within the TCPA fraud exemption, and Rose need not make a prima facie case as to unjust enrichment.[11]

Civil Conspiracy

To recover for civil conspiracy, a plaintiff must show "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). In other words, it is a derivative tort. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019).

---

[11] To the extent this claim or remedy arises from Rose's misappropriation of trade secrets, Texas Uniform Trade Secrets Act, and/or unfair competition claim, it would separately fall within the misappropriation of trade secrets TCPA exemption, as we discuss later in this opinion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(5)(A).

The underlying tort here is fraud.[12] Specifically, Rose alleges that BSW and Texas Spine were members of a group that agreed to work toward and did in fact purport to seize ownership of the facility from Rose and deny it the distributions and payments due under the agreements. As part of this scheme, Rose contends that BSW paid more than $40 million to fund the purchase of a controlling interest in Texas Spine and Joint, and thus, purportedly, the facility. Rose suffered injury to the extent that BSW and Texas Spine and Joint's conspiracy deprived them of their interest in the facility, profit distributions, and compensation. Since the basis of this derivative tort of conspiracy is fraud, it is likewise based on a common law fraud claim, and the exemption applies to it.

Aiding or Abetting Breach of Fiduciary Duty

A third party who knowingly aids and assists in the breach of a fiduciary duty may also be liable. *See Sw. Tex. Pathology Associates, L.L.P. v. Roosth*, 27 S.W.3d 204, 208 (Tex. App.—San Antonio 2000, pet. dism'd w.o.j.) (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942)). To establish a claim for knowing participation in a breach of fiduciary duty under Texas law, a plaintiff must assert: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007); *Straehla v. AL Glob. Services, LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020, pet. denied). This claim is also a derivative tort. *Straehla*, 619 S.W.3d at 804.

Rose alleged that, as a member and manager of 62 Roses, Texas Spine owed the fiduciary duties of care, loyalty, candor, and independence to Rose. *See, e.g., Ritchie*, 443 S.W.3d at 868-69. Rose contends that (1) Texas Spine and Joint committed a tort when it intentionally withheld notice that a transaction involving ownership of the facility had occurred; (2) BSW knew of the relationship, knew that it was a tort, and both intended to and did assist Texas Spine and Joint in completing it by participating in the transaction through its fraudulent conduct; and (3) the transaction's timing, BSW's involvement, and the changes to Texas Spine's logo and name would allow a factfinder to conclude that BSW knowingly participated in Texas Spine and

---

[12] Separately, BSW's actions supporting Rose's civil conspiracy claim could also fall within the TCPA's misappropriation of trade secrets exemption we discuss in the next section of this opinion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(5)(A); *see also W. Fork Advisors, LLC v. SunGard Consulting Services, LLC*, 437 S.W.3d 917, 920–21 (Tex. App.—Dallas 2014, pet. denied) (noting that misappropriation of trade secrets and unfair competition are underlying torts that could possibly support claim for civil conspiracy).

17

Joint's breaches of fiduciary duty. Similar to the civil conspiracy claim, this derivative tort is based on the alleged fraudulent scheme. Accordingly, we hold that it falls within the fraud exemption.

Conclusion

In summary, we hold that Rose's legal actions for unjust enrichment, civil conspiracy, and aiding and abetting breach of fiduciary duties are "legal action[s] based on a common law fraud claim," and accordingly are exempt from the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(12). Importantly, BSW's concession that Rose's common law fraud claim is exempt supplies the underlying tortious conduct required to support these derivative torts, and consequently, their exemption from the TCPA.[13] *See id.* Accordingly, Rose need make no prima facie case as to these claims. *See* **Round Table Physicians Group**, 607 S.W.3d at 883; *see also* **Atlas Survival Shelters**, 2020 WL 6788714, at *6.

**Misappropriation of Trade Secrets TCPA Exemption**

The TCPA also does not apply to "a legal action arising from an officer-director, employee-employer, or independent contractor relationship that: [ ] seeks recovery for misappropriation of trade secrets or corporate opportunities . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(5)(A). "Arising from" is not defined in the TCPA. The ordinary meaning of "arise" is "to originate; to stem from." *See Arise*, BLACK'S LAW DICTIONARY (10th ed. 2009); *see also* **Fazio v. Cypress/GR Houston I, L.P.**, 403 S.W.3d 390, 398 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Other Texas courts have applied a similar meaning in the TCPA context for other exemptions. *See, e.g.,* **Giri v. Estep**, No. 03-17-00759-CV, 2018 WL 2074652, at *4 (Tex. App.—Austin May 4, 2018, pet. denied) (mem. op.) (applying similar dictionary definition of "arises out of" to TCPA commercial speech exemption); **Robert B. James, DDS, Inc. v. Elkins**, 553 S.W.3d 596, 605-07 (Tex. App.—San Antonio 2018, pet. denied) (defining "arising out of" as to TCPA insurance contract exemption).

Rose's counterclaim includes causes of action for unfair competition/unfair competition by misappropriation, also called "common law misappropriation," and violations of the Texas Uniform Trade Secrets Act (TUTSA) and Texas Theft Liability Act (TTLA). Rose contends that

---

[13] In so holding, we do not intend to create a rule that these claims and remedies are per se based on a common law fraud claim in every case. However, under the pleadings and underlying facts as they have been developed at this juncture, these legal actions are based on a common law fraud claim.

these claims arose from ProjectRose's independent contractor relationship with Texas Spine and Joint, and consequently, these claims are exempt from the TCPA.

The Consultant Agreement, which was executed between Baylor Scott & White Texas Spine and Joint Hospital (Client) and ProjectRose MSO, LLC (Consultant) recites as follows:

> **WHEREAS**, Client has the need to obtain certain consulting services, particularly to provide consulting activities such as equipment procurement, funding sources, marketing activities, program structure for NFL athletics, etc., as well as assistance in sports science health and wellness sleep consultants marketing in the East Texas region. Consultant represents and warrants that it has expertise and proficiency in providing advice in this area, and the detail of the services to be rendered is set forth on **Exhibit A** (collectively referred to herein as "Services");
>
> **WHEREAS**, it is the desire of Client to engage the Services of Consultant to perform for Client consulting services for assistance in sports science sleep consultants marketing in the East Texas region, as an independent contractor and not as an employee.
>
> . . . .
>
> **6.01 Independent Contractor**
>
> (a) It is expressly acknowledged by the Parties hereto that Consultant is an "independent contractor" and nothing in this Agreement is intended nor shall be construed to create an employer/employee relationship, a partnership, a joint venture relationship, lease or landlord/tenant relationship, or to allow the Client to exercise control or direction over the manner or method by which Consultant performs the Services which are the subject matter of this Agreement; provided, always, that the Services to be furnished hereunder by Consultant shall be provided in a manner consistent with the standards governing such Services and the provisions of this Agreement.

The attached Exhibit A described similar activities as described in the recital concerning the types of services that Project Rose would provide. Rose contends that the services involve trade secrets. BSW does not provide any evidence refuting this assertion.

BSW does not challenge the applicability of this exemption other than to argue that BSW did not contract with Rose, and without such a relationship, the exemption does not apply. Importantly, and contrary to BSW's argument, this exemption applies to a legal action arising from an independent contractor relationship; it is not necessary that the party against whom the exemption applies be a party to the contract. So, even though Rose did not contract directly with BSW, Rose's legal action for these causes of action against BSW arose from ProjectRose's independent contractor relationship with Baylor Scott & White Texas Spine and Joint Hospital.

As with the TCPA fraud exemption, we must determine what claims asserted by Rose "seek recovery for misappropriation of trade secrets or corporate opportunities." Rose pleaded

causes of action for "unfair competition" for business conduct contrary to honest practice in industrial or commercial matters. As part of this action, Rose pleaded the tort of unfair competition by misappropriation, along with a misappropriation of trade secret claim under TUTSA and the TTLA.

The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters. *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App.—Waco 1993, writ denied). The tort called "unfair competition" consisting of "conduct that is contrary to honest practice in industrial or commercial matters" is a derivative tort requiring "a viable underlying tort or other illegal conduct for liability to exist." *Greenville Automatic Gas Co. v. Automatic Propane Gas & Supply, LLC*, 465 S.W.3d 778, 788 (Tex. App.—Dallas 2015, no pet.). Unfair competition includes a number of types of objectionable trade practices, including trademark infringement, dilution of good will, misappropriation of business value, palming off, passing off, and theft of trade secrets. *U.S. Sporting Prods.*, 865 S.W.2d at 217.

The elements of the tort of unfair competition by misappropriation, also called "common-law misappropriation," are "(1) the creation of plaintiff's product (i.e., the trade secret information) through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a 'free ride') because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff." *BP Automotive, L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 572 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Unlawful competition by misappropriation is one of multiple torts in the unfair competition umbrella. *See KBIDC Investments, LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *5, n.4 (Tex. App.—Dallas Oct. 9, 2020, pet. filed) (mem. op. on reh'g).

Rose also sued BSW for statutory and common-law misappropriation of trade secrets, violations of the TTLA and TUTSA, and for unfair competition by misappropriation. Misappropriation, or unlawful appropriation, is an element of each of these causes of action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.002(2) (West 2019) (under TTLA, "'[t]heft' means unlawfully appropriating property . . . ."); *id.* § 134A.003, .004 (West 2019) (under TUTSA, party may receive injunctive relief and damages for misappropriation of trade secrets); *BP*

*Automotive*, 448 S.W.3d at 572 (elements of unfair competition by misappropriation include the defendant used the plaintiff's product in competition with the plaintiff); *Twister B.V. v. Newton Research Partners, LP*, 364 S.W.3d 428, 437 (Tex. App.—Dallas 2012, no pet.) (elements of common law misappropriation of trade secrets include "the trade secret was acquired through breach of a confidential relationship or was discovered by improper means" and "the defendant used the trade secret without authorization").[14]

Rose alleges that Campbell's and Baxter's unique collegiate and professional experience resulted in extensive knowledge of sports injuries, return to play from injuries, sports medicine, and rehabilitation. They allege that these experiences led them to develop extensive trade secrets and intellectual property that they used to plan and develop the facility, including its marketing efforts. Campbell and Baxter, through Rose, used these trade secrets to develop and market the facility and the products it offers. Rose contends that BSW misappropriated these trade secrets and products and used them in competition with Rose after it gained an interest in the facility, thus damaging it. Specifically, Rose contends BSW profited from this misappropriation despite never paying anything for it.

It is important to note that the parties are not actually litigating the merits of these causes of action at this juncture, and we express no opinion as to whether Rose will prevail on them. Rather, we are merely determining whether these individual causes of action fall within the exemption. Moreover, as we have stated, BSW has not challenged Rose's assertion that these causes of action fall within the "misappropriation of trade secrets or corporate opportunities exemption" other than to contend that these causes of action do not arise from an independent contractor relationship because it did not contract with Rose.

---

[14] TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 532–33 (Tex. App.—San Antonio 2020, pet. filed) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 134A.007(a) (West 2019)). It does not affect "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 134A.007(b)(2)). When the gravamen of a common law claim duplicates a TUTSA claim, the common law claim is preempted. *Id.* at 533. This occurs if the factual basis of the common law claim, as pleaded, would not exist without the use of alleged trade secrets. *Id.* However, because TUTSA's preemption provision applies only to conflicting common law remedies, a common law claim is not preempted by TUTSA if it addresses harm separate from the trade secret misappropriation. *Id.* We need not resolve whether any of these claims are preempted here or address their continued viability. All of them, to the extent they are still viable causes of action, would fall within the exemption because they require misappropriation as they are pleaded by Rose. Their continued viability is to be litigated another day, not as part of a TCPA motion to dismiss, but some other appropriate method such as summary judgment or a trial on the merits.

Therefore, we hold that Rose's unfair competition/common law misappropriation and TUTSA/TTLA claims for misappropriation of trade secret causes of action are within the exemption. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(5). Consequently, as these causes of action are exempt from the TCPA, Rose is absolved from making a prima facie case as to the elements of those claims. *See Round Table Physicians Group*, 607 S.W.3d at 883; *see also Atlas Survival Shelters*, 2020 WL 6788714, at *6.

## PRIMA FACIE CASE

Next, we examine whether Rose satisfied its burden to establish a prima facie case for the remaining causes of action that are not exempt from the TCPA, namely: tortious interference with existing contract, promissory estoppel/detrimental reliance, quantum meruit, money had and received, and declaratory judgment. But first, we must address arguments that BSW failed to properly brief its challenge to Rose's claims, whether BSW preserved the trial court's failure to rule on its evidentiary objections, and the nature and quality of the evidence Rose must present to satisfy its burden to establish a prima facie case by clear and convincing evidence on each element of these claims.

### BSW Preserved Challenge to Rose's Prima Facie Case

Rose first argues that BSW waived its challenge to the prima facie case on appeal by failing to properly brief the issue. We disagree. We are reluctant to find briefing error. *Adams*, 547 S.W.3d 890, 896-97 (Tex. 2018) (cautioning against applying overly restrictive error preservation rules in TCPA context). BSW raised the issue in its brief by stating that Rose failed to meet its burden to establish by clear and convincing evidence a prima facie case on each element of its causes of action. BSW identified the elements for all causes of action raised by Rose and explained that it failed to meet its burden.[15] The burden is on Rose to establish its prima facie case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Andrews Cty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015) (per curiam). Furthermore, we review the trial court's implied finding that Rose sufficiently discharged this burden de novo. *Adams*, 547 S.W.3d at 896-97. Accordingly, BSW preserved its challenge.

---

[15] We note, however, that BSW failed to provide much in the way of analysis as to how Rose failed to satisfy its burden. But in any event, it preserved the issue for our review.

**Governing Law – Prima Facie Case**

To defeat BSW's TCPA motion to dismiss, the TCPA requires Rose to establish by clear and specific evidence a prima facie case for each essential element of its counterclaim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). "Clear" means unambiguous, sure or free from doubt, and "specific" means explicit or relating to a particular named thing. *In re Lipsky*, 460 S.W.3d at 590. A prima facie case is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id.* To meet the "clear and specific evidence" requirement, a plaintiff must provide enough detail to show the factual basis for its claim. *Id.* at 591. The TCPA does not require direct evidence of each essential element of the underlying claim to avoid dismissal. *Id.* However, conjecture, guess, or speculation cannot survive "clear and specific" scrutiny under the TCPA. *See Van der Linden v. Khan*, 535 S.W.3d 179, 195 (Tex. App.—Fort Worth 2017, pet. denied).

**BSW Preserved Trial Court's Refusal to Rule on Its Evidentiary Objections**

The 2019 TCPA amendments provide that we shall consider the pleadings, evidence that we could consider under Texas Rule of Civil Procedure 166a (summary judgment rule), and supporting and opposing affidavits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006 (West 2020). In general, for purposes of issue preservation for appeal, a trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 165-66 (Tex. 2018). Summary judgment evidence must be admissible. *See* TEX. R. CIV. P. 166a(f); *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997).

Here, BSW made its objections to Rose's TCPA evidence. The trial court did not rule on BSW's objections. BSW timely objected to the trial court's refusal to rule in writing. Accordingly, BSW preserved error in this regard. *See* TEX. R. APP. P. 33.1(a)(2)(B) (stating objection to refusal to rule sufficient to preserve issue for appeal); *see also* Lynne Liberato & Natasha Breaux, *Objecting to Summary Judgment Evidence in State Court: Recent Clarifications and Remaining Complications*, 56 Hous. Law. 10, 11–12 (Sept./Oct. 2018) (describing evolution of Texas law on error preservation when trial court does not rule on summary judgment evidentiary objections).

23

Furthermore, we are in the same position as the trial court in evaluating the objections at the TCPA phase of this proceeding. Although we were unable to locate specific authority on this subject, we agree with the reasoning from a prominent treatise discussing Texas summary judgments:

> A trial judge who makes a ruling on the admissibility of summary judgment proof, however, is in no different position than an appellate justice looking at the identical proof. The judge and the justice are both looking at the same affidavit or deposition from a paper trial and are equally situated in terms of applying the rules of evidence—which is the very reason the standard of appellate review for the merits of a summary judgment appeal is de novo. Consequently, there appears to be a sound argument for applying a de novo standard of review to evidentiary rulings in a summary judgment proceeding rather than the deferential standard used for trials.

Timothy Patton, *Summary Judgments in Texas: Practice, Procedure and Review* § 6.10[5] (3d ed. 2020). Therefore, based on the above rationale, along with judicial economy concerns, we need not remand to the trial court with instructions to rule on the complained of TCPA evidence.

**Pleadings Alone Are Insufficient to Satisfy Nonmovant's Evidentiary Burden**

Rose contends that we may rely on the pleadings alone as sufficient evidence to support the finding that it discharged its TCPA burden to establish by clear and convincing evidence a prima facie case of each element of its claims. *See **Rogers v. Soleil Chartered Bank***, No. 02-19-00124-CV, 2019 WL 4686303, at *7 (Tex. App.—Fort Worth Sept. 26, 2019, no pet.) (mem. op.).[16] The Fourteenth Court of Appeals in Houston disagreed with the reasoning in ***Rogers*** and we agree. *See **Buzbee v. Clear Channel Outdoor, LLC***, 616 S.W.3d 14, 29 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

Although there is only one section discussing the evidence we may review, there are different burdens on the parties during the multi-step TCPA procedural framework. For instance, the movant need only "demonstrate" that the TCPA applies, and the cases recite that the pleadings alone may satisfy this burden in reference to the movant's initial burden in demonstrating the TCPA's applicability. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); ***Hersh***, 526 S.W.3d at 467 (holding that, when determining TCPA applicability,

---

[16] The ***Rogers*** court went on to caution, however, that a party who chooses to rely only on its pleading "gambles that the often-times conclusory and sketchy allegations of a notice pleading will not satisfy the clear and specific burden of establishing a prima facie case." ***Rogers v. Soleil Chartered Bank***, No. 02-19-00124-CV, 2019 WL 4686303, at *7 (Tex. App.—Fort Worth Sept. 26, 2019, no pet.) (mem. op.). The ***Rogers*** court ultimately concluded that the nonmovant's "gamble did not pay off," because the nonmovant's pleading lacked the specificity necessary to establish a prima facie case for each of the nonmovant's claims. ***Id.***

court may look solely to nonmovant's pleading and, in doing so, accept the allegations as true insofar as they describe the nature of claims).  Similarly, whether an exemption applies may be determined by examining the pleadings.  *See **Gaskamp***, 596 S.W.3d at 480; *see also **Hawkins***, 606 S.W.3d at 46.

Once the TCPA is applicable, however, the nonmovant has a different burden.  The nonmovant must satisfy the prima facie case requirement, and although we may consider the pleadings as part of this analysis, they are not sufficient by themselves to satisfy this standard.  As the ***Buzbee*** court explained, "accepting all allegations as true for purposes of establishing a prima facie case—without concomitantly demanding evidence that is legally sufficient to establish the allegations as factually true if it is not countered . . . would nullify the very purpose of the TCPA's burden-shifting mechanism."  ***Buzbee***, 616 S.W.3d at 29.  The Texas Supreme Court has suggested that this is the appropriate rule in this phase of the process.  *See **Montelongo***, 622 S.W.3d at 301 (noting that nonmovant must "submit evidence of facts" that establish each essential element of the claim); ***Hersh***, 526 S.W.3d at 467-68 (although noting that the nonmovants' petition is best evidence for determining TCPA applicability in first step of analysis, nonmovants failed to satisfy their burden to "produce" sufficient evidence of essential element of claim in second step of TCPA analysis).

Accordingly, once the court is satisfied that the TCPA applies and the burden shifts to the nonmovant, the TCPA requires something beyond allegations in the pleading "to support a rational inference that an allegation is true."  ***Buzbee***, 616 S.W.3d at 29.  "Allegations alone are not sufficient."  *See **id.***

In reviewing whether Rose discharged its burden, the current statute states that we consider the pleadings, evidence properly considered under Texas Rule of Civil Procedure 166a, and supporting and opposing affidavits.  Primarily, BSW challenges the admissibility of Baxter's declaration.

In general, "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute . . . ."  TEX. CIV. PRAC. & REM. CODE ANN. § 132.001(a) (West 2019).  Such a declaration must be in writing and must be subscribed as true under penalty of perjury.  ***Id.*** § 132.001(c).  The statute requires a jurat to appear in "substantially" the same form as the template jurat before an unsworn declaration becomes operative.  ***Id.*** § 132.001(d).

"Although the declaration jurat fails to contain [the declarant's] address and date of birth, such an omission is not fatal . . . ." *United Rentals, Inc. v. Smith*, 445 S.W.3d 808, 812–13 (Tex. App.—El Paso 2014, no pet.). Rather, the "key to an unsworn declaration" is that it must be signed under penalty of perjury. *See Gillis v. Harris County*, 554 S.W.3d 188, 193 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Finally, given the early stage of this litigation, although we have held that Rose must present some evidence to satisfy its burden here, it need not necessarily present the best evidence to satisfy this burden. *See MediaOne, L.L.C. v. Henderson*, 592 S.W.3d 933, 943 (Tex. App.—Tyler 2019, pet. denied) (citing *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 998 (S.D. Tex. 2018) ("Clearly, under the expedited TCPA proceedings, [the nonmovant] would be prejudiced if he were required to obtain the best evidence since he has not had the opportunity to conduct discovery . . . .")). Baxter's declaration states that it is made under penalty of perjury, and we hold that its shortcomings are not fatal and that it is admissible for TCPA purposes.

**Tortious Interference with Existing Contract**

To establish a claim for tortious interference with a contract, a plaintiff must establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Prof'l Services Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

To prove the willful and intentional interference element of a tortious interference claim, the plaintiff must show that the defendant was legally capable of tortious interference. *Id.* To be legally capable of tortious interference, the defendant must be a stranger to the contract with which he allegedly interfered. *Id.* BSW admits that it never contracted with Rose.

Intentional interference does not require intent to injure, only that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* According to Baxter's declaration and its attached exhibits, Rose provided evidence BSW was aware of Rose's existing agreements with Texas Spine and Joint. As we discuss in the section of this opinion on BSW's misidentification defense, Rose attached admissible evidence of the purchase raising a fact issue as to BSW's role in the purchase by way of a Securities and Exchange Commission (SEC) 10-K report detailing the purchase. BSW challenges the admissibility of this document. However, it is admissible as a self-authenticating

business record of a government agency. *See* TEX. R. EVID. 803(6), 901(b)(4), 902.5; **Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3**, 557 S.W.3d 825, 832 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (holding that documents retrieved from the "SEC's online database" were admissible as self-authenticating business records).

Rose contends that this funding and acquisition of Texas Spine and Joint, and consequently the facility, was a willful and intentional interference with Rose's contracts with Texas Spine and Joint, because it subsequently repudiated the agreements without compensating Rose for Baxter's and Campbell's efforts. Specifically, Baxter claimed in his declaration that BSW was aware of the agreements during the next two years that Texas Spine feigned operation of the facility under the agreements' terms. BSW's interference caused Rose to lose its interest in the facility and to suffer lost distributions and payments that were due under the agreements' terms. Accordingly, we hold that Rose satisfied its TCPA burden with respect to its tortious interference claim.

**Promissory Estoppel/Detrimental Reliance**

The elements of a claim of promissory estoppel or detrimental reliance are: (1) the defendant made a promise to plaintiff, (2) the plaintiff reasonably and substantially relied on the promise to its detriment, and (3) plaintiff's reliance was foreseeable to defendant. *See* **Henry Schein, Inc. v. Stromboe**, 102 S.W.3d 675, 686 n.25 (Tex. 2002). Promissory estoppel is not applicable to a promise covered by a valid contract between the parties, but can apply to a promise outside a contract. **Trevino & Associates Mech., L.P. v. Frost Nat. Bank**, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.).

Rose provided no evidence that BSW made any promise to it, an essential element of a detrimental reliance/promissory estoppel claim. *See* **Maddox v. Vantage Energy, LLC**, 361 S.W.3d 752, 761–62 (Tex. App.—Fort Worth 2012, pet. denied) (citing **Wheeler v. White**, 398 S.W.2d 93, 97 (Tex. 1965)). Consequently, it failed to make a prima facie case as to each essential element of this cause of action, and it must be dismissed.

**Quantum Meruit**

Quantum meruit is an equitable theory of recovery which is based on an implied agreement to pay for benefits received. **Heldenfels Bros., Inc. v. City of Corpus Christi**, 832 S.W.2d 39, 41 (Tex. 1992). The elements of quantum meruit are: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and

materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732–33 (Tex. 2018). Generally, the existence of an express contract covering the subject matter of the dispute precludes recovery in quantum meruit. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005); *see also Hill*, 544 S.W.3d at 733.

Furthermore, to recover in quantum meruit, Rose must show that its efforts were undertaken for the party sought to be charged; it is not enough to merely show that its efforts benefitted the defendant. *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985); *McFarland v. Sanders*, 932 S.W.2d 640, 643 (Tex. App.—Tyler 1996, no writ).

The services were provided specifically to Texas Spine and Joint, and there is no evidence that Rose intended to provide the services directly to BSW. Rather, the allegations and evidence suggest that BSW may have been an incidental beneficiary based on the alleged actions we have discussed at length in this opinion, which is insufficient to satisfy Rose's burden. Although this cause of action is related to the unjust enrichment and money had and received causes of action, Rose failed to make a prima facie case for this cause of action due to its additional element that the services be provided to BSW. *See Bashara*, 685 S.W.2d at 310; *McFarland*, 932 S.W.2d at 643. Therefore, this claim must be dismissed.

**Money Had and Received**

Rose pleaded a claim for money had and received. A cause of action for money had and received is equitable in nature. *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007); *Acoustical Screens in Color, Inc. v. T. C. Lordon Co., Inc.*, 524 S.W.2d 346, 350 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.). The claim "belongs conceptually to the doctrine of unjust enrichment." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ).

The courts describe this claim in general principles. For example, courts have stated that a claim for money had and received seeks to restore money where equity and good conscience require restitution. *Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied). It is not premised on wrongdoing, but seeks to determine to which party, in equity, justice, and law, the money belongs, and it seeks to prevent

unconscionable loss to the plaintiff and unjust enrichment to the defendant. ***Bryan v. Citizens Nat'l Bank in Abilene***, 628 S.W.2d 761, 763 (Tex. 1982); ***Staats v. Miller***, 150 Tex. 581, 584, 243 S.W.2d 686, 687 (1951). As these broad and general descriptions demonstrate, a cause of action for money had and received is "less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which . . . belongs to the plaintiff." ***Staats***, 150 Tex. at 584, 243 S.W.2d at 687–88 (internal quotations and citations omitted).

To prove the claim, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him. *See **Best Buy Co. v. Barrera***, 248 S.W.3d 160, 162–63 (Tex. 2007) (per curiam) (citing ***Staats***, 150 Tex. at 584, 243 S.W.2d at 687). Texas courts have allowed restitution for these types of claims in a variety of cases, including by a defrauded party against the party who committed the fraud. *See **Edwards***, 252 S.W.3d at 837 (citing ***Staats***, 150 Tex. at 583–85, 243 S.W.2d at 686–88; ***Wiseman v. Baylor***, 69 Tex. 63, 64–66, 6 S.W. 743, 743–44 (Tex. 1887)).

Unlike promissory estoppel/detrimental reliance and quantum meruit, money had and received does not depend on either representations made by the defendant or that the services specifically be provided to the defendant. Rather, it is the broadest equitable remedy to compensate the claimant for money that in good conscience belongs to it, without regard to wrongdoing of any party. Although other causes of action are more specifically designed to compensate Rose and redress its injuries based on the actions of BSW here, we cannot say that the cause of action does not apply or that Rose failed to make a prima facie case by clear and specific evidence of its essential elements.[17]

Rose presented evidence from Baxter's declaration that it provided substantial value in relation to the facility, including hours of marketing efforts, trade secrets, and intellectual property. For example, the news articles we describe above track the progress of the facility and the efforts and value that Baxter and Campbell provided. Rose also attached photos of the various stages of completion, including what appears to be a finished product. Through these efforts, Rose maintains, BSW, TSJH, and the third-party defendants all received the benefit of—

---

[17] With this flexible equitable remedy that may sometimes compensate a plaintiff for fraudulent acts as Rose has pleaded, it is unclear whether this could fall within the "legal action based on common law fraud" exemption. This is due in part to the amorphous nature and flexibility of this cause of action. Even if it does not fall into the exemption, Rose has satisfied its burden to show a prima facie case here as we have explained.

and continue to generate revenue from—a state-of-the-art sports medicine facility. However, Rose has not received any payment for these services and trade secrets. Rose also attached its invoices for the consulting work it provided that remain unpaid. In short, Rose contends that BSW continues to reap the benefits and revenue of a world-class facility that was built on the efforts, intellectual property, and network of Baxter and Campbell without providing any compensation, which if true, would lead to unjust enrichment. Therefore, we hold that Rose satisfied its TCPA burden on this cause of action.

**Declaratory Judgment**

The Uniform Declaratory Judgments Act (UDJA) is a procedural device available as a remedy. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (per curiam) (orig. proceeding). The UDJA's purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b). A person interested under a written contract or other writing constituting a contract or whose rights are affected by a contract may have determined any question of construction or validity arising under the instrument or contract, and obtain a declaration of rights, status, or other legal relations thereunder. *Id.* § 37.004(a). Thus, a declaratory judgment is appropriate when a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Id.*

In the instant case, the Company Agreement between Touchdown Interception and Texas Spine and Joint contained a provision requiring written consent of the other members prior to a sale of its interest. Specifically, Section 10.01 of the Company Agreement, entitled "Prohibition Against Transfers," states that "[e]xcept as otherwise provided in this Agreement, a Member shall not sell, assign, transfer, encumber, or otherwise dispose of any portion of its Membership Interests except with the prior written consent of a Majority in Interest." Section 10.05 of the Agreement states that "[a]ny attempted transfer not in full compliance with the terms of this Agreement shall, except for the limited rights provided to an Assignee hereunder, be null and void."

Rose contends that Texas Spine and Joint breached this provision when it sold its interest to BSW and repudiated the contract. Rose contends that BSW's purchase-funding interfered

30

with the Company Agreement between Touchdown and Texas Spine and Joint. Rose seeks a declaration of its rights after the sale, and a real and substantial justiciable controversy exists here that can be resolved by a declaration because Touchdown did not agree to any transfer, and it now seeks to have the transfer made null and void. Rose sufficiently made its prima facie case on its UDJA claim. *See **Berry v. ETX Successor Tyler***, No. 12-18-00095-CV, 2019 WL 968528, at *5 (Tex. App.—Tyler Feb. 28, 2019, no pet.) (mem. op.) (evaluating declaratory judgment action in TCPA context).

**Damages**

In the TCPA analysis, the nonmovant need not provide proof by way of direct evidence of damages, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct. *See **S & S Emergency Training Sols., Inc. v. Elliott***, 564 S.W.3d 843, 847 (Tex. 2018).

Rose contends that the facility was opened and that Texas Spine and Joint and the third-party defendants operate the facility without ever compensating them for their time, toil, talent, and labor, as well as their expertise and trade secrets they contributed. Rose submitted invoices for all its work which it alleges remain unpaid. Viewing the evidence in the light most favorable to Rose, it has shown the required prima facie case supporting the inference that it suffered some damages that naturally flowed from Texas Spine and Joint's and the third-party defendants' wrongful conduct, including BSW's actions.

**Conclusion**

We hold that Rose satisfied its burden with respect to its tortious interference with existing contract, money had and received, and declaratory judgment claims. Rose failed to satisfy its burden with respect to its promissory estoppel/detrimental reliance and quantum meruit claims, and those claims must be dismissed.

Therefore, the portion of BSW's first issue arguing that it preserved its challenge to Rose's prima facie case, the scope of the evidence we may consider in this evaluation, as well as its challenge to Rose's promissory estoppel/detrimental reliance and quantum meruit claims is sustained. The portion of its first issue challenging Rose's prima facie case on its remaining claims is overruled.

BSW contends that it established its defense that Rose sued the wrong party when it impleaded BSW as a third-party defendant. In its brief, BSW spends significant argument concerning Rose's alleged failure to show that BSW was a proper party. However, it is BSW's burden to conclusively establish its defense in the TCPA phase of the litigation in order to obtain dismissal of Rose's counterclaim against it. BSW failed to discharge this burden. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d) (requiring movant to establish an affirmative defense or other ground on which it is entitled to "judgment as a matter of law).

BSW points to the declaration of Jennifer Colon, the Vice President of Finance for Joint Ventures of Baylor Health Enterprises. In her declaration, she states that "Baylor Scott & White" is not a legal name of a corporation on file with the Texas Secretary of State but is instead an assumed name of Baylor Scott & White Health. Colon stated that this company provided legal, human resources, and other support services to affiliated entities so that they can operate a not-for-profit health system in Texas, providing healthcare at many locations. She further stated that Baylor Scott & White Health did not acquire any interest in Texas Spine and Joint Hospital LLC, as alleged in the Third-Party Petition. As support, Colon attached a filing from the Texas Secretary of State showing that Baylor Scott & White is an assumed name. However, Colon provided no evidence that BSW took no part in the acquisition of the facility other than her statement to that effect in her declaration. While this might be sufficient evidence to support such a finding, it is far from conclusive.

Furthermore, Rose attached a public SEC 10-K filing, retrieved from its online database, which at least raises a fact issue on BSW's misidentification defense.[18] This means that BSW failed to show it is entitled to judgment as a matter of law. For example, the 10-K report describing the acquisition of the facility states as follows:

> Texas Health Ventures Group, L.L.C. and subsidiaries (THVG or the Company), a Texas limited liability company, was formed on January 21, 1997, for the primary purpose of developing, acquiring, and operating ambulatory surgery centers and related entities. THVG is a joint venture **between Baylor University Medical Center (BUMC), an affiliate of Baylor Scott & White Holdings (BSW Holdings)**, who owns 50.1% of THVG and USP North Texas, Inc. (USP), a Texas corporation and consolidated subsidiary of United Surgical Partners International, Inc.

---

[18] As we held earlier in this opinion, the report is admissible as a self-authenticating business record of a government agency. *See* TEX. R. EVID. 803(6), 901(b)(4), 902.5; *Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 832 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

(USPI), who owns 49.9% of THVG. USPI is a subsidiary of Tenet Healthcare Corporation. **BSW Holdings and its "controlled" affiliates are referred collectively herein as "BSWH"**. THVG's fiscal year ends June 30. Fiscal years of THVG's subsidiaries end December 31; however, the financial information of these subsidiaries included in these consolidated financial statements is as of June 30, 2018 and 2017, and for the years ended, June 30, 2018, 2017 and 2016.

. . . .

On August 2, 2017, Texas Health Venture Texas Spine, LLC, a wholly-owned subsidiary of THVG, completed its acquisition of Texas Spine and Joint Hospital, LLC (Tyler), resulting in a 50.25% controlling interest. **The consideration of $40,900,000 and $40,700,000 was paid to the sellers by BSWH and USP, respectively**. From the date of contribution to June 30, 2018, THVG recognized approximately $98,600,000 of total revenues and approximately $5,800,000 of net income from Tyler.

. . . .

8. RELATED-PARTY TRANSACTIONS

**THVG operates the Facilities under management and royalty contracts, and THVG in turn is managed by BSWH and USP, resulting in THVG incurring management and royalty fee expense payable to BSWH and USP in amounts equal to the management and royalty fee income THVG receives from the Facilities**. THVG's management and royalty fee income from the facilities it consolidates for financial reporting purposes eliminates in consolidation with the facilities' expense and therefore is not included in THVG's consolidated revenues. THVG's management and royalty fee income from facilities which are not consolidated was $600,000 for years ended June 30, 2018, 2017, and 2016, and is included in other income in the accompanying consolidated statements of income.

The management and royalty fee expense to BSWH and USP was approximately $41,973,000, $38,530,000, and $35,432,000 for the years ended June 30, 2018, 2017, and 2016, respectively, and is reflected in operating expenses in THVG's consolidated statements of income. Of the total, 64.3% and 1.7% represent management fees payable to USP and BSWH, respectively, and 34% represents royalty fees payable to BSWH.

The 10-K report establishes that one of the parties that acquired Texas Spine and Joint Hospital is Baylor University Medical Center, which is an affiliate of Baylor Scott & White Holdings. The 10-K report also states that BSW Holdings *and its "controlled" affiliates* are referred throughout the report as BSWH. BSW admits it is an assumed name for Baylor Scott & White Health in its brief and through Colon's declaration, and it failed to negate that it is an affiliate controlled by BSWH, as that term is used in the 10-K report. Finally, the report notes BSWH paid consideration of $40,900,000 to Texas Spine and Joint Hospital, LLC to acquire it. This evidence creates a fact issue on BSW's defense.[19]

---

[19] Bolstering Rose's argument is the fact that it served a request for disclosure, one of which requests disclosure of "the correct names of the parties to the lawsuit." *See* TEX. R. CIV. P. 194.2(a). BSW failed to respond to this request, as it is required to do. It is not unreasonable to surmise that BSW failed to respond to the request for disclosure because Rose might have sued the correct party, but it is simply a matter of misnomer rather than misidentification.

Therefore, the remaining portion of BSW's first issue pertaining to its defense of misidentification is overruled, as is its second issue challenging the trial court's failure to sustain its evidentiary objections.

## DISPOSITION

We have held that the TCPA applies to Rose's counterclaim, and that Rose failed to satisfy its burden to make a prima facie case as to its promissory estoppel/detrimental reliance and quantum meruit causes of action as part of its counterclaim against BSW. Accordingly, BSW is entitled to at least some amount and measure of attorney's fees under the TCPA.[20]

However, Rose was largely successful in demonstrating that its causes of action were either exempt from the TCPA or satisfying its burden of making a prima facie case on most of its causes of action. BSW also failed to establish its defense that Rose sued the wrong party when it impleaded BSW into this lawsuit.

Accordingly, we *reverse* the trial court's order denying BSW's TCPA motion in part and *render* an order dismissing the following legal actions against BSW: (1) promissory estoppel/detrimental reliance, and (2) quantum meruit. We *affirm* the remainder of the trial court's order denying the TCPA motion. We *remand* this case to the trial court for a determination of attorneys' fees and costs as to these legal actions, and for further proceedings consistent with this opinion.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered August 30, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[20] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009 (West 2020).

34



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 30, 2021**

**NO. 12-20-00246-CV**

**BAYLOR SCOTT & WHITE,**
Appellant
V.
**PROJECT ROSE MSO, LLC, TOUCHDOWN INTERCEPTION, LLC, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF 62 ROSES, LLC,**
Appellees

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 20-0438-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was error in the order as entered by the court below and that same should be reversed and judgment rendered in part, and affirmed in part.

It is therefore ORDERED, ADJUDGED and DECREED by this Court that the trial court's order denying Appellant Baylor Scott and White's TCPA motion in part be, and the same is, hereby **reversed** and an order rendered **dismissing** the following legal actions against Baylor Scott and White: (1) promissory estoppel/detrimental reliance, and (2) quantum meruit. It is further ORDERED, ADJUDGED and DECREED that the remainder of the trial

court's order denying the TCPA motion be **affirmed** and this cause be **remanded** to the trial court for a determination of attorneys' fees and costs as to these legal actions, and for further proceedings consistent with this opinion; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*